## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**DEBORAH ELIZABETH BENSFIELD**                                                          **PLAINTIFF**

**v.**                         **CIVIL ACTION NO. 4:21-CV-P104-JHM**

**DEPUTY MURRAY** *et al.*                                                        **DEFENDANTS**

### MEMORANDUM OPINION

This is a *pro se* prisoner civil-rights action brought pursuant to 42 U.S.C. § 1983. The matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the action will be dismissed.

### I. SUMMARY OF COMPLAINT

Plaintiff Deborah Elizabeth Bensfield indicates that she was incarcerated at the Daviess County Detention Center (DCDC) as a pretrial detainee. She brings this action against five DCDC deputies in both their official and individual capacities – Deputy Murray, Deputy Nard, Deputy Hocker, Deputy Lane, and Deputy Moore.

Plaintiff states that she was incarcerated at DCDC from approximately September 15, 2021, until October 4, 2021. She alleges that she was placed on suicide watch while incarcerated there and that Defendants and other deputies violated her rights while she was on suicide watch. For example, she states that Defendant Murray violated her rights by bringing her a smelly "suicide blanket" that she had dragged on the floor and gave her a mat that she had attempted to remove the padding from. Plaintiff also alleges that Defendant Murray dumped a food tray while passing it to Plaintiff on one occasion which caused carrots and Fritos to jam Plaintiff's "food flap."

Plaintiff next alleges that when Defendant Nard returned her suicide mat to her it smelled like urine. She states that due to her "Aryan Brotherhood roots and Deputy Nards race/ethnicity I

suspect it was personal." Plaintiff states that approximately two weeks later Defendants Nard and Hocker brought her a new mat to replace the "urine-smelling one I had been living on."

Plaintiff also states that "they also did not do a disciplinary hearing within the 72 hour window."

Plaintiff next alleges that Defendant Lane "took 4 hours to respond to my PREA concern" and that it was later dismissed as "unsubstantiated."

Plaintiff alleges that Defendant Moore "refused to pass grievances along the proper chain of command" and that another DCDC official responded to her grievances in an "inappropriate, hurtful way." She also states that she was told that Defendant Lane "had banned/grounded me from being able to use the grievance system."

Plaintiff next states that Defendant Moore failed to give her all the forms she needed to file the instant action.

As relief, Plaintiff seeks damages and injunctive relief in the form of the expungement of her record.

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

**A. Official-Capacity Claims**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Defendants are actually against Daviess County.

When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). "[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993)).

Here, Plaintiff does not allege that any harm she suffered was the result of a custom or policy implemented or endorsed by Daviess County. Thus, the Court will dismiss Plaintiff's official-capacity claims for failure to state a claim upon which relief may be granted.

**B. Individual-Capacity Claims**

   **1. Suicide Watch**

The Court first addresses Plaintiff's allegations concerning her conditions of confinement while on suicide watch. The Fourteenth Amendment applies to conditions-of-confinement claims

brought by pretrial detainees. *Brawner v. Scott Cty.*, 14 F.4th 585, 591 (6th Cir. 2021). This standard has two prongs. To satisfy the first prong, a plaintiff must show "that [s]he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the second prong, a plaintiff must show that Defendants acted "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cty.*, 14 F.4th at 596 (quoting *Farmer*, 511 U.S. at 836).

Upon consideration, the Court finds that Plaintiff's allegations that Defendant Murray only gave her a thin mat to sleep on and a smelly blanket and jammed her "food flap" when she dropped Plaintiff's food tray and that Defendant Nard gave her a blanket that smelled like urine while she was on suicide watch fail to satisfy either prong of this standard.

Moreover, the Court can discern no constitutional claim based upon Plaintiff's conclusory allegation that that DCDC officials "did not do a disciplinary hearing within the 72 hour window."

Thus, Plaintiff's claims related to her placement on suicide watch and her conditions of confinement while there will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Grievance Concerns

The Court next turns to Plaintiff's allegations that Defendant Moore "refuse[d] to pass grievances along the proper chain of command" and that Defendant Lane "banned/grounded me from being able to use the grievance system."

The Sixth Circuit has held that there is there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure. " *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *see also Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th

Cir. 2003) (holding "there is no inherent constitutional right to an effective prison grievance procedure") (citing cases).

In light of this jurisprudence, the Court finds that Plaintiff's grievance-related allegations fail to state a claim upon which relief may be granted.

### 3. PREA Report

The Court next turns to Plaintiff's allegation that Defendant Lane failed to timely respond to a report she made under the Prison Rape Elimination Act (PREA).

To the extent that Plaintiff seeks to bring a claim against Defendant Lane for a violation of PREA, PREA does not create a private cause of action which can be brought by an individual plaintiff. *See Pope v. Oregon Dep't of Corr.*, No. 3:10-cv-00632-KI, 2012 U.S. Dist. LEXIS 71218, at *4 (D. Or. May 22, 2012) ("[I]t is well established that there is no private right of action under PREA.") (citing *Porter v. Jennings*, No. 1:10-cv-01811-AWI-DLB PC, 2012 U.S. Dist. LEXIS 58021, at *1 (E.D. Cal. Apr. 25, 2012) (citing numerous cases)); *Good v. Ohio Dep't of Rehab. & Corr.*, No. 2:11-cv-00857, 2011 U.S. Dist. LEXIS 127558, at *5 (S.D. Ohio Nov. 3, 2011). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. . . . The statute does not grant prisoners any specific rights." *Chinnici v. Edwards,* No. 1:07-cv-229, 2008 U.S. Dist. LEXIS 61460, at *3 (D. Vt. Aug. 12, 2008) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002)).

Thus, the Court will dismiss Plaintiff's PREA claim for failure to state a claim upon which relief may be granted.

### 4. Failure to Provide Court Forms

Finally, the Court turns to Plaintiff's allegation that Defendant Moore failed to give her all the forms she needed to file the instant action.

6

The construes this allegation as an attempt to assert a claim based upon Plaintiff's constitutional right of access to the courts. To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) ("Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."). That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id*. at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

Here, Plaintiff does not assert that Defendant Moore's failure to provide her the forms she believed she needed to file this action caused her actual injury. More specifically, she fails to allege that a non-frivolous claim has been lost, rejected, or unable to be presented in this action due to Defendant Moore's conduct.

Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date: February 18, 2022

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
    Daviess County Attorney
4414.011